```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION


Charles William Carter,          :

        Plaintiff,                :

    v.                            :    Case No. 2:05-cv-0380

Reginald A. Wilkinson, et al.,    :    JUDGE MARBLEY

        Defendants.               :
```

REPORT AND RECOMMENDATION

This is a prisoner civil rights case in which plaintiff, Charles William Carter, alleges injurious exposure to second-hand smoke while confined in the Ohio prison system. The case has a lengthy and somewhat complex procedural history, which will be repeated here only to the extent that it pertains to the motions which are considered in this Report and Recommendation. Those motions are a motion to dismiss filed by defendants Montgomery, Petro, Marti, and Holloway (#70) and a motion to dismiss filed by the Ohio Attorney General on behalf of other defendants named in the original complaint and four defendants named in the amended complaint (#79). For the following reasons, the Court will recommend that the first motion to dismiss be granted and that the second motion to dismiss be denied.

I.

As noted, Mr. Carter's claims arise out of his alleged exposure to second-hand smoke. He named numerous defendants in his original complaint as being responsible, in one way or another, for the failure of the Ohio Department and Rehabilitation and Correction to control smoking in Ohio penal institutions even though certain laws and regulations have been enacted which, if rigidly enforced, would have created a number

of smoke-free environments within the prisons.  The complaint alleges that two former Ohio Attorneys General, Betty D. Montgomery and Jim Petro, and two Assistant Attorneys General, J. Eric Holloway and Todd R. Marti, share legal responsibility for Mr. Carter's exposure to second-hand smoke.  These four defendants have moved to dismiss his claims, advancing a number of arguments in support of their motion.  Because one of the arguments, absolute prosecutorial immunity, is generally dispositive of Mr. Carter's claims, and because the Court finds that neither of the former Attorneys General owed any duty to Mr. Carter which can be enforced under §1983, it will be recommended that their motion to dismiss be granted.

At first blush, it would appear obvious that neither the Attorneys General of Ohio, nor Assistant Attorneys General assigned to the Corrections Litigation Section of the Attorney General's office, would bear any responsibility for conditions within Ohio prisons.  The Ohio prison system is administered by a completely separate department, the Ohio Department of Rehabilitation and Correction, which has its own director and its own supervisory officials, including wardens in charge of these institutions.  If there were a problem with enforcing anti-smoking regulations within specific prisons, the only persons who could potentially be liable for that problem would seem to be employees of the Department of Rehabilitation and Correction.

Not so, according to Mr. Carter.  He alleges two separate theories of liability against defendants Montgomery, Petro, Marti, and Holloway.  According to his complaint, it was the responsibility of both Ms. Montgomery, when she was the Attorney General of Ohio, and Mr. Petro, her successor, to insure that state laws relating to the provision of non-smoking areas within the state prisons were enforced.  Additionally, he notes that Ms. Montgomery's office, through Messrs. Marti and Holloway, defended

2

at least one case in which the plaintiff alleged that non-smoking policies were not being adequately enforced within Ohio's penal institutions. For both of these reasons, he claims that these defendants can be held liable to him for his exposure to second-hand smoke.

It is true, in a general sense, that the Attorney General of the State of Ohio is the chief law enforcement officer in the State and is therefore tasked with the obligation to enforce the laws of the State. However, this is a duty owed to the general public and not to any specific member of the public. Moreover, it is the duty that, if breached, does not involve an affirmative action to injure a particular person but rather the failure to take action in order to prevent injury.

In <u>DeShaney v. Winnebago County Dept of Social Services</u>, 489 U.S. 189 (1989), the Supreme Court considered whether a state actor can ever be held liable under §1983 for failing to protect an individual from harm, as opposed to being liable where the state actor is directly responsible for causing the harm alleged. In that case, the Court concluded that there is no affirmative obligation on the part of any State to provide the general public with adequate protective services. The Court also concluded that although, "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals," <u>id</u>. at 198, a special relationship must exist between the state and the injured party in order for liability to be present. Although at some level representatives of the State of Ohio may owe such duties to persons like Mr. Carter who are imprisoned by the State and therefore are not free to procure certain services and protections for themselves, the level of liability does not extend to the State Attorney General with respect to duties such as the enforcement of laws which are designed to benefit either

the public at large, or a large segment of the public such as the entire population of the state prison system. Cf. Gilchrist v. City of Livonia, 599 F.Supp. 260 (E.D. Mich. 1984)(liability cannot be predicated upon the general duty of the state to enforce its laws). Consequently, neither Ms. Montgomery nor Mr. Petro can be held liable simply because, as Attorneys General, they had the overall responsibility to enforce laws passed for the benefit of the entire prison population.

Mr. Carter's claims against Ms. Montgomery, Mr. Marti, and Mr. Holloway relating to their conduct in prior litigation fails for a different reason. Certain state actors are absolutely immune from suit under §1983 for performing certain state functions. These immunities predated the enactment of §1983 and have been incorporated into the case law interpreting that statutorily-created cause of action. One of the immunities applies to prosecuting attorneys acting in that capacity. As the Supreme Court recognized in Imbler v. Pachtman, 424 U.S. 409 (1976), state prosecutors enjoy absolute immunity both from liability and from suit for any actions taken in connection with the initiation and continuation of a criminal prosecution. The theory behind such an immunity is that it would be very difficult, if not impossible, to find people to perform the job of state prosecutor if they could be sued by every criminal defendant who was dissatisfied with some aspect of the prosecution.

A number of court decisions have recognized that this immunity, and the reasons behind it, are fully applicable to state attorneys general even when they are defending a suit brought against the state rather than prosecuting a criminal defendant. So, for example, the Court of Appeals for the Second Circuit, in Barrett v. United States, 798 F.2d 565, 572 (1986), held that "since [the Attorney General] is charged with a public

trust he should not be inhibited in the faithful performance of his duties by the threat of having lawsuits against him. His function as a government advocate therefore entitles him to absolute immunity" when he performs his role as an attorney in defending the state in a civil action. See also Auriemma v. Montgomery, 860 F.2d 273 (7th Cir. 1988). This principle has been cited with approval by the Court of Appeals for the Sixth Circuit. See Skinner v. Govorchin, 463 F.3d 518, 525 (6th Cir. 2006).

When Ms. Montgomery's office, through Assistant Attorneys General Todd Marti and Eric Holloway, defended the prior litigation, they were acting in their capacity as advocates for the State of Ohio. Consequently, their actions in connection with that litigation cannot give rise to liability under §1983. Mr. Carter's claim against them also fails.

Mr. Carter may also be arguing that one or more of these four defendants learned about the ODRC's alleged failure to enforce anti-smoking laws through the prior lawsuits and that they had some responsibility after learning that fact to take some action to protect him. However, that argument fails either because it is simply a variation on the argument that they have a general duty to see that the law is enforced, or because it is an effort to hold them responsible in a supervisory capacity rather than for some action they personally engaged in. Supervisory liability is not available in a §1983 action, however. Shehee v. Luttrell, 199 F.3d 295 (6th Cir. 1999).

In his response to the motion to dismiss, Mr. Carter argues that the Court cannot consider the motion because these issues have already been decided by the Court of Appeals. This case was, after its initial dismissal, appealed to the Court of Appeals for the Sixth Circuit, and the dismissal of the case was reversed. Mr. Carter argues here (as he also does in response to

5

the other motion to dismiss, discussed below) that issues relating to dismissal are not open for consideration by this Court. However, the Court concludes that Mr. Carter is mistaken in this argument.

When an action is appealed and the Court of Appeals renders a decision, this Court is bound by that decision. However, the general rule is that after a reversal and remand, "the trial court may consider those issues not decided expressly or impliedly by the appellate court...." Jones v. Lewis, 957 F.2d 260, 262 (6th Cir. 1992). The Court of Appeals addressed only a single issue in its opinion because this Court had dismissed the case on a single ground: that Mr. Carter had not alleged a sufficient actual injury in order to have standing to pursue his claims. The standing issue has been resolved in his favor, and it is not open for reconsideration. However, even though Mr. Carter may have standing to pursue his claims, that does not mean that he can do so without regard to making out the other elements of a cause of action under §1983, including identifying legal duties owed to him by the defendants and overcoming any claims of immunity which they may raise. Those issues simply were not decided by the Court of Appeals. Consequently, the Court of Appeals' opinion poses no obstacle to this Court's consideration of the arguments advanced in the motion to dismiss.

II.

The other issue in this case, and one which has plagued the case since its outset, is the question of service of process. All of the remaining defendants, and the new defendants added by Mr. Carter in his amended complaint, have argued that he has not properly served them with the complaint. One of Mr. Carter's responsive arguments is that this issue, too, cannot be raised now because of the Court of Appeals' decision. For the same reasons stated above, the Court concludes that this issue is

available for consideration. Consequently, the Court will examine the merits of the motion to dismiss.

Some procedural history is necessary to place this issue into context. Mr. Carter paid the full filing fee when he filed his complaint. As a result, he neither requested nor was granted leave to proceed *in forma pauperis*. In *in forma pauperis* cases, the United States Marshal is responsible for serving the complaint on the defendants. Here, because Mr. Carter does not enjoy that status, service of the complaint is his responsibility. The Clerk issued summonses to him for the defendants so that he could make proper service.

Mr. Carter chose to attempt to make service by sending a complaint and summons to each defendant by certified mail. There appears to be no dispute that he did so and that the defendants received the mailings. They argue, however, that certified mail originating directly from the plaintiff is not an appropriate method of making service under Fed.R.Civ.P. 4. As a result, they all request dismissal of this action for failure to make service.

The Court had a discussion with Mr. Carter and counsel for the plaintiffs about waiver of service after this case was remanded from the Court of Appeals. At that time, all of the employees of the Department of Rehabilitation and Correction indicated that they would refuse to waive service. The Court expressed no opinion on whether that refusal was reasonable and gave Mr. Carter the option to request a waiver. In a Report and Recommendation and Order filed on September 27, 2007, the Court concluded that Mr. Carter had not properly requested such a waiver and that he was not entitled to recover any costs of service which he had incurred. Consequently, the question currently before the Court is not whether Mr. Carter could properly have requested a waiver and whether defendants could properly have refused to waive without incurring liability for

7

costs.  Rather, the question is whether the certified mailings which Mr. Carter made constitute proper service under Fed.R.Civ.P. 4.

In order to answer this question, it is necessary to examine Rule 4 in some detail.  Although waiver of service is the preferred method of advising a defendant that he or she has been sued and triggering the time for filing a response to the complaint, if a defendant chooses not to waive service, there are specific provisions of Rule 4 that govern how service is made.  In particular, Rule 4, in separate subsections, specifies two different aspects of service of process.  First, it defines the persons who are permitted to serve a complaint.  Second, it defines the manner in which that service must be made.

With respect to the persons entitled to serve a complaint, Rule 4(c) allows any person "who is not a party and who is at least 18 years of age" to serve a summons and complaint.  Here, although Mr. Carter was the originator of the certified mailings, he argues that they were delivered by employees of the United States Postal Service.  Assuming that these employees were all at least 18 years of age, because they are not parties to this lawsuit, they may well qualify as persons who can properly serve a summons and complaint under Rule 4(c).  That answer is only a portion of the service question however.  In addition to service being made by a proper person, it must also be made in a proper manner.  The manner of service applicable to this case is set forth in Rule 4(e).

Rule 4(e) is entitled "Service Upon Individuals Within a Judicial District of the United States."  Two different methods of service are set forth in Rule 4(e).  The first allows service to be made pursuant to the law of the State in which the District Court is located.  The second requires personal delivery of the summons and complaint.

8

Under Ohio law, a complaint can be served by certified mail. However, that certified mailing must be made by the Clerk of Court.  In order to provide that option to litigants before this Court, the Court has adopted Local Rule 4.2.  That rule allows the plaintiff to address an envelope to the defendant, to place a copy of the summons and complaint in the envelope, to affix a return receipt card to the envelope showing the name of the sender as the Clerk of the Court, and to deliver the envelope with sufficient postage to the Clerk of this Court.  The Clerk then mails the summons and complaint, and the procedures for determining whether service has been completed as specified in the Ohio Rules of Civil Procedure are followed.  That did not happen here because Mr. Carter did not deliver any of his certified mail envelopes to the Clerk of Court.

Since Mr. Carter did not properly serve the complaint under Ohio law, his only other option was to comply with Rule 4(e)(2). That rule allows service "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion" or "by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."  It is beyond dispute that "the Federal Rules of Civil Procedure do not provide for service of original process by mail, including certified mail." Staudte v. Abrahams, 172 F.R.D. 155, 156 (E.D. Pa. 1997).  See also LSJ Inv. Co. v. O.L.D., Inc., 167 F.3d 320 (6th Cir. 1999)(holding that under current Rule 4, although a waiver of service may be sent by mail, formal service cannot occur by mailing).  As a result, all of the defendants correctly assert that they have not properly been served.

It is somewhat unfortunate, although not particularly surprising, that Mr. Carter is not fully versed in the

9

technicalities of service of process in the federal court.  It is a subject which confounds even practicing attorneys at times.  However, even though he is a *pro se* litigant, Mr. Carter must still comply with the applicable rules of this Court.  His misunderstanding does permit the Court to grant him an extension of time in which to effect service.  <u>See</u> Fed.R.Civ.P. 4(m).  Now that the provisions for making service have been fully explained to Mr. Carter, he must effect service on all remaining defendants in a timely fashion.  Consequently, the Court grants him an extension of 90 days from today's date in which to do so.

                                III.

     Based upon the foregoing, it is recommended that the motion to dismiss filed by defendants Montgomery, Petro, Marti, and Holloway (#70) be granted.  It is further recommended that the motion to dismiss filed by the remaining defendants (#79) be denied.  However, Mr. Carter, must properly effect service on those defendants within 90 days of the date of this Report and Recommendation.  His failure to do so will result in the dismissal of any unserved defendant without prejudice.

                       <u>PROCEDURE ON OBJECTIONS</u>

       If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with

instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge