IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Charles William Carter,            :

          Plaintiff,               :

     v.                            :     Case No. 2:05-cv-0380

Reginald A. Wilkinson, et al.,     :     JUDGE MARBLEY

          Defendants.              :

ORDER AND REPORT AND RECOMMENDATION

     This is a prisoner civil rights case in which plaintiff,
Charles William Carter, alleges injurious exposure to second-hand
smoke while confined in the Ohio prison system.  The case has a
lengthy and somewhat complex procedural history, which will be
repeated here only to the extent that it pertains to the motion
for judgment on the pleadings (#115) filed by defendants Coval,
Eleby, Lawless, Hall, Upchurch, Lisath, Payne, Younker, Price,
Kearns, Carol, Nichols, Warren, Hammond, Jones, Shoop, Guy,
Taylor, Hewitt, Barnett, Powers, Simmons, Lacy, Bain, Price,
Cunningham, Hughes, McCrew, Bell, Taylor, Henry, Thompson,
Whitten, Turner, Arledge, Hurley, Duncan, Callens, and Vaught.
That motion is the subject of this Report and Recommendation.
For the following reasons, the Court will recommend that the
motion for judgment on the pleadings be granted in part and
denied in part.

I.

     A motion for judgment on the pleadings attacks the
sufficiency of the pleadings and is evaluated under the same
standard as a motion to dismiss.  Amersbach v. City of Cleveland,
598 F.2d 1033, 1038 (6th Cir. 1979).  In ruling upon such motion,
the Court must accept as true all well-pleaded material

allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  <u>Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 479 F.2d 478, 480 (6th Cir. 1973).  <u>Pro se</u> complaints are to be construed liberally in favor of the <u>pro se</u> party.  <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).  It is with these standards in mind that the motion for judgment on the pleadings must be decided.

## II.

As noted, Mr. Carter seeks damages and other relief arising out of his alleged exposure to second-hand smoke.  He named numerous defendants in his original complaint as being responsible, in one way or another, for the failure of the Ohio Department and Rehabilitation and Correction to control smoking in Ohio penal institutions even though certain laws and regulations have been enacted which, if rigidly enforced, would have created a number of smoke-free environments within the prisons.  On September 10, 2008, the Court dismissed two former Ohio Attorneys General, Betty D. Montgomery and Jim Petro, and two Assistant Attorneys General, J. Eric Holloway and Todd R. Marti, as defendants on grounds of absolute prosecutorial immunity.  The remaining defendants include the director and various other management personnel at ODRC, as well as officials and employees at the Ross Correctional Institution where Mr. Carter is incarcerated.

## III.

The defendants advance several arguments in support of their motion for judgment on the pleadings.  Defendants Wilkinson, Eleby, Hurley, Upchurch, Whitten, Coval, Lisath, Payne, Younker, Hall, Lacy, Lawless, Bain, Price, Vaught, Warren, Price, Turner, Powers, Simmons, Kearns, Cunningham, Shoop, Jones, and Henry contend that Mr. Carter failed to state a claim against them

2

because he did not allege that they were personally involved in any constitutional deprivations. They also maintain that Mr. Carter's allegations against them are vague and conclusory and thus lack the requisite elements to state a claim for conspiracy. Defendants Whitten, Coval, and Upchurch additionally argue that Mr. Carter has failed to state a claim against them for their handling of his grievances because prisoners do not have a constitutional right to an effective grievance procedure. The defendants further argue that to the extent the complaint alleges that they failed to follow Ohio law or prison policy, such allegations do not state a claim under 42 U.S.C. §1983. To the extent that Mr. Carter has properly asserted a federal constitutional claim, the defendants contend that they are entitled to qualified immunity.

The defendants assert various jurisdictional defenses as well. They contend that Mr. Carter lacks standing to assert his claims because he does not identify an actual injury resulting from the unconstitutional acts about which he complains. They also maintain that he lacks standing to assert claims that arise out of conditions at the London Correctional Institution and North Central Correctional Institution because he is not incarcerated at either of these locations. In addition, the defendants contest this Court's jurisdiction over any of Mr. Carter's state-law damage claims absent a finding by the Ohio Court of Claims that they are not entitled to immunity. They further claim that any request for injunctive relief against them for an alleged failure to discharge duties imposed by state law is barred by the Eleventh Amendment.

When a motion for judgment on the pleadings is based on both lack of jurisdiction and failure to state a claim, the Court should consider the jurisdictional issues first. See National Rifle Ass'n of America v. Magaw, 909 F.Supp. 490, 493 (E.D. Mich.

1995), aff'd in part and rev'd in part on other grounds, 132 F.3d 272, 279 (6th Cir. 1997)(the threshold question in all federal cases is whether the court has the power to entertain the suit). Accordingly, the Court will turn first to the question of Mr. Carter's standing, which is a jurisdictional inquiry. See Allen v. Wright, 468 U.S. 737 (1984).

IV.

Article III standing requires that " a plaintiff... demonstrate that he has suffered 'injury in fact,' that the injury [be] 'fairly traceable' to the actions of the defendants, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). This Court initially found on screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A that Mr. Carter lacked such standing and therefore dismissed his complaint for failure to state a claim. The Court of Appeals, however, ultimately determined on appeal that the allegations set forth in his complaint satisfied the standard enunciated by the Supreme Court. Consequently, the decision to dismiss was reversed, and the case remanded to this Court.

When an action is appealed and the Court of Appeals renders a decision, this Court is bound by that decision. See Westside Mothers v. Olszewski, 454 F.3d 532 (6th Cir. 2006). Under the law of the case doctrine and the complemental mandate rule, the Court must "implement both the letter and the spirit of the appellate court's mandate, taking into account the appellate court's opinion and the circumstances it embraces." Id. at 538 (internal citation and quotation marks omitted). The rule is limited to the issues decided in the appeal, and the Court may consider issues not decided expressly or impliedly by the appellate court. Id. The Court of Appeals addressed only a

4

single issue in its opinion because this Court had dismissed the
case on a single ground: that Mr. Carter had not alleged a
sufficient actual injury in order to have standing to pursue his
claims.  The Article III standing issue has been resolved in his
favor, and it is not open for reconsideration.

The Court of Appeals did not address the argument now raised
by the defendants that Mr. Carter lacks third-party standing to
litigate claims arising out of LCI and NCCI because he is not
incarcerated at either of these prison facilities.  However, in
light of Mr. Carter's explicit denial that he is asserting such
claims, it is not necessary for the Court to consider the
defendants' argument.  For similar reasons, the Court also does
not need to decide whether it has subject matter jurisdiction to
entertain any claims Mr. Carter may have raised that arise under
Ohio law or whether the Eleventh Amendment would operate as a bar
to such claims.  Mr. Carter's response makes it abundantly clear
that his only claim stems from the defendants' alleged violation
of his right to be free from cruel and unusual punishment under
the Eighth Amendment and is based on the Supreme Court's decision
in Helling v. McKinney, 509 U.S. 25 (1993).  Any references in
the complaint to state law or policies and/or the failure of the
defendants to follow such laws and policies relate solely to this
constitutional claim and are not intended by him as an
independent cause of action.

V.

The next issue raised by the motion for judgment on the
pleadings is whether the complaint sufficiently alleges that all
of the defendants were personally involved in causing the injury
about which Mr. Carter complains.  Allegations of direct
involvement in constitutional deprivations, rather than attempts
to impose liability by virtue of the doctrine of respondeat
superior, are necessary in order to hold an individual defendant

liable under §1983.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).  Although there are other legal claims that can properly be asserted against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under 42 U.S.C. §1983 cannot rest on such a claim.  Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted.  <u>See also Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984).  This rule holds true even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior.  <u>See Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under §1983 for failing to respond to grievances which alert them of unconstitutional actions); <u>see also Stewart v. Taft</u>, 235 F.Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under §1983 cannot attach where the allegation of liability is based upon a mere failure to act").

A. Defendant Wilkinson

In his complaint and supplemental pleading, Mr. Carter alleges that defendant Reginald Wilkinson, as director of ODRC, was responsible for the department's purported failure to adopt procedures to enforce the anti-smoking provisions of Ohio Rev. Code §5145.32(E).  One such provision requires the director of ODRC to designate at least one tobacco-free housing area within each state correctional institution.  <u>See</u> Ohio Rev. Code §5145.32(D)(1).  The term "tobacco-free" is not defined.

The complaint acknowledges that Housing Unit 6A at RCI is designated smoke-free.  The complaint further acknowledges that

defendant Wilkinson signed Administrative Rule 5120-9-59 which attempts to implement the provisions of Ohio Rev. Code §5145.32. Subsection (D)(2) of the statute provides that no person shall smoke or use tobacco in a housing unit that the director has designated as "tobacco-free." There is no similar prohibition on the mere possession of tobacco products. In fact, the only correctional institutions where the possession of tobacco products is prohibited are the Corrections Medical Center in Columbus and the Ohio State Penitentiary in Youngstown. See Ohio Rev. Code §5145.32(B) and Administrative Rule 5120-9-59(B).

Mr. Carter also claims that defendant Wilkinson is liable under respondeat superior for the actions of every corrections officer or employee of ODRC. In response to the motion for judgment on the pleadings, Mr. Carter expounded on his position by claiming that defendant Wilkinson had "directly participated" in the alleged constitutional deprivation because Wilkinson had signed Administrative Rule 5120-9-59 entitled "Smoking and Tobacco Use in Institutions" and because Wilkinson's name appeared on the letterhead on two pieces of correspondence.

The administrative rule signed by defendant Wilkinson among other provisions prohibited any person from smoking or otherwise using tobacco within the designated smoke-free areas within each state correctional institution. The rule further provided that violations of these restrictions by employees were to be addressed by ODRC's standards of employee conduct and that violations by inmates were to be governed by ODRC's conduct rules for inmates. The rule thus would appear on its face to carry out the statutory requirements for which Mr. Carter seeks enforcement. As for the two letters referred to in plaintiff's response to defendants' motion, in neither case does the correspondence indicate that defendant Wilkinson directly participated in or encouraged any wrongful behavior constituting

7

a violation of plaintiff's Eighth Amendment rights.  Thus, the
complaint does not state a §1983 claim against Director
Wilkinson.

B. Defendant Eleby

The complaint alleges that defendant William Eleby, Chief of
ODNR's Bureau of Classification and Reception, failed to enact
procedures to identify non-tobacco users.  The alleged conduct
thus appears to be based on a mere failure to act.  The only
affirmative conduct that Mr. Carter can point to is defendant
Eleby's response to inmate Becker's allegation that he had
observed correctional officers and supervisory personnel smoking
in Unit 6A which was supposed to be smoke free.  Defendant Eleby
informed inmate Becker that he was forwarding the grievance to
the appropriate authorities.  Since the failure to respond to a
grievance is not actionable under §1983, see Shehee, supra,
defendant Eleby cannot be liable for sending the communication to
the person responsible for handling the problem.  Moreover, the
grievance in question was not even Mr. Carter's, but rather
another inmate's.  Thus, this defendant is also entitled to
dismissal.

C. Defendant Hurley

Mr. Carter alleges that defendant Pat Hurley, the warden at
RCI, is liable for violating his Eighth Amendment rights because
Hurley failed to establish procedures to prevent breaches of Ohio
Rev. Code §5145.32 and Administrative Rule 5120-9-59 despite the
fact that the issue was repeatedly brought to the warden's
attention.  Mr. Carter also asserts that defendant Hurley, by
virtue of his position as warden, was responsible for the conduct
of all employees at RCI under a theory of respondeat superior.

In his response to the defendants' motion, Mr. Carter
refers to numerous grievances sent to the warden by both himself
and inmate Becker in which they complained about smokers being

8

placed in Unit 6A and/or corrections officers and other staff
members smoking in prohibited areas.  In nearly all of these
instances, defendant Hurley was not the individual who responded
to the grievances.  The exhibits demonstrate that defendant
Hurley's involvement was limited to his receipt of inspection
reports and signing off on the recommendations for corrective
action contained in such reports.  There are no allegations that
defendant Hurley actively participated in or encouraged any
wrongful conduct or refused to take any corrective action where
the grievances were eventually found to have merit.

### D. Defendant Upchurch

Mr. Carter claims that defendant Carol Upchurch, the deputy
warden at RCI, was assigned the task of investigating plaintiff's
informal complaint regarding inmate smoking in Unit 6A.
According to the complaint, she simply "passed the buck" by
returning the informal complaint to him and requiring him to send
it to his unit manager.  Mr. Carter argues that by failing to
investigate and take corrective action, defendant Upchurch
"condoned" the violation of plaintiff's Eighth Amendment rights.
However, merely failing to respond to a grievance, even one which
alerts the public official to unconstitutional actions, is
insufficient to establish liability under §1983.  See Shehee,
supra.

### E. Defendant Whitten

The complaint alleges that defendant Robert Whitten, the
inspector of institutional services at RCI, repeatedly failed to
stop purported violations of the Eighth Amendment despite being
presented with numerous inmate grievances.  Mr. Carter
specifically states that defendant Whitten circumvented the
grievance procedure by delaying action on inmate complaints and
then seeking additional time to dispose of them.  He does not
explain, however, why the mere failure even to respond to an

9

inmate's grievance establishes liability under §1983.  Further, while Mr. Carter says that defendant Whitten condoned and encouraged the violation of plaintiff's Eighth Amendment rights by his inaction, he does not point to Whitten's active encouragement of any specific act of misconduct.  This is simply not the type of personal involvement required to impose liability under §1983. <u>See</u> <u>Stewart</u>, <u>supra</u>.  Moreover, several of the exhibits relied upon by Mr. Carter show that defendant Whitten actually found some inmate grievances to have merit and recommended corrective action such as tighter screening of prisoners before placing them in designated smoke-free units and the posting of notices to RCI staff in areas where smoking was prohibited.

## F. Defendants Martinez and Coval

The complaint alleges that defendants Cheryl Martinez and Linda Coval are liable due to their failure to initiate corrective action to address repeated Eighth Amendment violations despite numerous opportunities to do so.  Defendant Martinez is the Chief Inspector for ODRC.  It is somewhat unclear whether Ms. Martinez is one of the defendants moving for judgment on the pleadings.  Nevertheless, Mr. Carter has addressed her alleged personal involvement in his response. Defendant Coval is the Assistant Chief Inspector.  Mr. Carter contends that defendant Martinez, as supervisor, is also liable for the inaction of defendant Coval under the doctrine of <u>respondeat</u> <u>superior</u>.

The exhibits referenced by Mr. Carter show that he and other inmates at RCI appealed the disposition of at least some of their grievances to the Office of the Chief Inspector.  In all such cases, the appeals were assigned to defendant Coval for resolution.  Mr. Carter alleges that defendant Coval failed to resolve the purported violations to his satisfaction by affirming the decisions of the institutional inspector.  In one instance

cited by the plaintiff, defendant Coval refused to take further action on a grievance about which the RCI inspector had notified Mr. Carter that he needed additional time to investigate.

As previously noted, respondeat superior is not a basis for liability under §1983. See Monell, supra. Because Mr. Carter has failed to allege any personal involvement on the part of defendant Martinez, she cannot be liable for any alleged violations of his Eighth Amendment rights. Furthermore, because Mr. Carter does not have a constitutional right to an effective grievance procedure, see Argue v. Hofmeyer, 80 Fed App'x 427, 430 (6th Cir. 2003)(citations omitted), he likewise fails to state a claim against defendant Coval.

G. Defendant Lisath

The complaint alleges that defendant Jeff Lisath, as deputy warden of operations, is liable for the actions of corrections officers at RCI under respondeat superior. The complaint further alleges that the issue of tobacco use in tobacco-free housing has been presented to defendant Lisath on numerous occasions and that his failure to take effective action in response to these grievances has resulted in the deprivation of Mr. Carter's Eighth Amendment rights.

The exhibits referenced in Mr. Carter's response to the defendants' motion for judgment on the pleadings purportedly demonstrate this perceived lack of response by defendant Lisath. In several instances, defendant Lisath returned the grievance to the inmate with instructions to send it to the staff person or department most responsible. In other cases, defendant Lisath acknowledged the fact that Unit 6A was designated as "smoke-free" and indicated that RCI was currently working on the problem of inmate assignments to Unit 6A. Meanwhile, defendant Lisath reiterated that the anti-smoking policy was being strictly enforced and that any inmate caught smoking would be immediately

11

removed from Unit 6A. Defendant Lisath also promised to follow up with the shift captains on the use of tobacco products by staff members in prohibited areas.

As earlier noted, respondeat superior is not a basis for liability under §1983. See Monell, supra. Also previously noted is that Mr. Carter does not have a constitutional right to an effective grievance procedure. See Arque, supra. Mr. Carter has not alleged that defendant Lisath directly participated in or actively encouraged any specific misconduct that led to the deprivation of the plaintiff's Eighth Amendment rights. Therefore, the complaint fails to state a claim against defendant Lisath upon which relief can be granted. See Shehee, supra.

H. Defendant Payne

Defendant Charlene Payne is Unit Manager Administrator at RCI. According to the complaint, she is responsible for the training of unit managers in such matters as the procedures for moving an inmate from one housing unit to another. Mr. Carter alleges a lack of procedures relative to tobacco-free housing and asserts that defendant Payne is liable for her failure to initiate such procedures. As a result, the transfer of inmates who smoke to tobacco-free units allegedly occurs frequently. Mr. Carter further claims that Exhibit W documents the violation of his Eighth Amendment rights.

Exhibit W appears to be an informal complaint submitted to defendant Payne by inmate Becker on May 27, 2003, and a response. Mr. Becker states that another inmate who had been removed from Unit 6A on May 21, 2003, for smoking was returned to Unit 6A only two days later. Mr. Becker suggests that before an inmate is placed back into tobacco-free housing prison officials should check the commissary records to ensure that the inmate has not purchased tobacco products within the past 90 days.

The response to the grievance admits that inmate Levine was

moved back to Unit A for security reasons and based on bed space
availability.  The response stated that inmate Levine was on the
list to be moved out of Unit 6A as soon as bed space became
available in another unit.  The response also stated per the
warden that an inmate who purchases tobacco products at the
commissary is not eligible for placement in smoke-free housing
for nine months instead of the former ninety days.

Mr. Carter fails to allege that defendant Payne participated
in or encouraged any specific incident of misconduct leading to
the deprivation of his Eighth Amendment rights.  The complaint
fails even to allege that inmate Levine smoked or used tobacco
during the time he was placed back in Unit 6A.  Mr. Carter
further provides no basis for his assertion that defendant Payne
was responsible either for the training of unit managers or for
initiating procedures relating to the transfer of inmates into
tobacco-free housing.  There is no allegation in the complaint
that defendant Payne was, in fact, the individual who responded
to inmate Becker's grievance, and the response itself is
unsigned.   Absent a claim that defendant Payne was personally
involved in the alleged constitutional violation, what remains
appears to be nothing more than Mr. Carter's belief that she
ought to be liable for the alleged wrongful acts of her
subordinates.  As pointed out several times already, however,
respondeat superior is no basis for a §1983 action.  See Monell,
supra.

I. Defendant Younker

Defendant Rodney Younker is a sergeant at RCI allegedly
responsible for incoming prisoners.  The complaint states that
defendant Younker was negligent for failing to establish a
procedure whereby inmates are assigned housing based on their use
or non-use of tobacco products.  The exhibits attached to the
complaint which are referenced by Mr. Carter reflect defendant

13

Younker's denial that his office has anything to do with housing assignments. Mr. Carter provides no basis either in the complaint or in his response to the defendants' motion for his contrary belief.

Even if defendant Younker had the responsibilities described in the complaint, "negligence ... alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." Perez v. Oakland County, 466 F.3d 416, 423 (6th Cir. 2006)(citing Estelle v. Gamble, 429 U.S. 07, 105-06 (1976)). Thus, even were defendant Younker responsible for establishing a procedure for the assignment of inmates at RCI, his negligence in failing to do so would not support an Eighth Amendment claim where deliberate indifference is not even alleged. Because the complaint does not assert that defendant Younker was personally involved in any deliberate or reckless unconstitutional action, it fails to state a claim upon which relief can be granted. See Bellamy, supra.

J. Defendant Hall

Major Hall is the senior corrections officer at RCI. As such, according to the complaint, defendant Hall is liable for the actions of all captains, lieutenants, sergeants, and corrections officers at RCI under respondeat superior. Mr. Carter further contends that defendant Hall is liable for failing to ensure that the orders of his superiors were carried out, for failing to ensure that posted orders were followed, and for failing to take action after being informed of violations. Mr. Carter asserts that, as the result of such inaction, defendant Hall allowed plaintiff's health to be jeopardized by second-hand smoke. In plaintiff's view, defendant Hall's failure to act established a violation of his constitutional right to be free from cruel and unusual punishment.

The doctrine of respondeat superior cannot form the basis of liability for a §1983 claim. See Monell, supra. Defendant

14

Hall's right to control the actions of his subordinates is, therefore, insufficient to state a claim absent an assertion that he encouraged the specific incident of misconduct or directly participated in it.  See Shehee, supra.  Mr. Carter has made no such assertion here.  Similarly, defendant Hall's alleged liability cannot be based on a mere failure to act; to be liable, he must have engaged in active unconstitutional behavior.  See Stewart, 235 F.Supp.2d at 767 (citing Salehpour v. Univ. Of Tenn., 159 F.3d 199, 206 (6th Cir. 1998)).  Because the complaint does not allege any active unconstitutional conduct on the part of defendant Hall, it fails to state a claim against him.

K. Defendants Lacy, Lawless, Bain, Price, Vaught, Warren, and Shoop.

Defendants Lacy, Lawless, Bain, Price, Vaught, Warren, and Shoop are shift captains at RCI.  The complaint makes the same allegations against these defendants, namely that each is responsible for the corrections officers on his or her shift.  As pled by Mr. Carter, the shift captains are liable for the actions of officers under their command according to the doctrine of respondeat superior.  Mr. Carter further alleges that each of these captains failed in their duties and thereby "allowed, condoned, and encouraged the violation of Plaintiff's Eighth Amendment rights."  Their failure allegedly jeopardized Mr. Carter's health.  Mr. Carter also points to the fact that the captains had been specifically directed to instruct the corrections officers on their shift regarding Administrative Rule 5120-9-59, but does not state whether or not this was, in fact, done.

In his supplemental pleading (#5), Mr. Carter states that on two separate occasions during the overnight shift, inmates housed in Unit 6A observed corrections officers assigned to that unit smoking while making their rounds.  On both occasions, defendant

Shoop was allegedly the shift captain.  Mr. Carter asserts that defendant Shoop is liable for the acts of these corrections officers under respondeat superior.  Attached to the supplemental pleading is Exhibit AK evidencing that inmate Becker filed an informal complaint regarding one of these alleged incidents. Defendant Shoop responded to the grievance stating that all staff assigned to Unit 6A, including the corrections officer in question, were aware of the posted orders and policy prohibiting smoking in designated tobacco-free areas.  According to defendant Shoop, the officer denied smoking, and he believed her statement to be true, particularly in light of Mr. Becker's uncertainty regarding the officer's identity.

In his second supplemental complaint (#59), Mr. Carter alleges that he also attempted to bring to the attention of defendants Lacy and Price an incident where a corrections officer allegedly did nothing while three inmates shared a cigar in Unit 3A, another designated non-smoking unit, but that defendant Lacy returned his complaint because it was not in a proper format. Defendant Whitten subsequently upheld Captain Lacy's response as appropriate.

Because respondeat superior is not a proper basis for a cause of action under §1983, see Monell, supra, defendants Lacy, Lawless, Bain, Price, Vaught, Warren, and Shoop will not be held liable for the actions of their subordinates.  At most, Mr. Carter's allegations amount to a charge that the defendants failed to act in the face of others' misconduct and that some of these defendants may have had actual knowledge of alleged constitutional deprivations.  Mr. Carter fails, however, to allege that any of these defendants directly participated in or actively encouraged the behavior about which he complains, i.e. smoking in designated tobacco-free areas. See Shehee, supra. Thus, his complaint fails to state a claim against them even

though he maintains that the resulting second-hand smoke jeopardized his health in violation of his right to be free from cruel and unusual punishment.

L. Defendants Price, Turner, Powers, Simmons, Kearns, Cunningham, and Jones

Defendants Price, Turner, Powers, Simmons, Kearns, Cunningham, and Jones are all lieutenants at RCI. The complaint alleges that each of them works under the supervision of a shift captain and oversees the junior officers' performance of their duties in the housing units and other common areas at RCI. Mr. Carter contends that the lieutenants are directly responsible for the actions of junior corrections officers, presumably under a theory of respondeat superior. Their duties allegedly include instructing and training those junior officers as to the requirements of Ohio Rev. Code §5145.32(D)(2) and Administrative Rule 5120-9-59. In Mr. Carter's view, the defendants' purported failure to provide such instruction renders them liable for the alleged violation of his Eighth Amendment rights. In his response to the motion for judgment on the pleadings, Mr. Carter additionally asserts that the lieutenants attended meetings at RCI at which they were told to enforce the anti-smoking rules and that, despite these orders, they failed to carry out the law.

As was the case concerning the allegations against the shift captains, the declarations made with respect to the lieutenants are based either on the doctrine of respondeat superior or a mere failure to act. The fact that Mr. Carter did not use the term "respondeat superior" here does not change the substance of his allegations. See Salehpour, 159 F.3d at 206. There are no allegations that any of these lieutenants were personally involved in the deprivation of plaintiff's constitutional rights. Consequently, the complaint fails to state a claim against defendants Price, Turner, Powers, Simmons, Kearns, Cunningham,

and Jones.

M. Defendant Henry

Mr. Carter states in his second supplemental pleading that defendant Consuella Henry is the unit manager for 6 House, which includes the tobacco-free housing in Unit 6A.  He contends that, as unit manager, the defendant supervises the unit staff and is responsible for the security, health, and welfare of the inmates housed therein.  Defendant Henry's liability thus appears to be predicated on nothing more than <u>respondeat</u> <u>superior</u>, which this Court has repeatedly noted is not a proper basis for liability under §1983.

Mr. Carter also takes issue with a memorandum from Sergeant Taylor (Exhibit AN-1).  The memorandum states that effective July 5, 2006, inmates in Unit 6A will be permitted to possess, but not use, tobacco products, including smokeless tobacco.  Defendant Henry appears to have approved this memorandum acting as unit manager.  Mr. Carter argues that this memorandum openly defies Ohio Rev. Code §5145.32 because possession of such products by inmates living in Unit 6A will cause the unit no longer to be tobacco-free.  He further maintains that before the new policy was enacted, inmates faced discipline for violating the anti-tobacco rules only when tobacco products were found in their cells and that since the new rule was adopted, no inmate has been disciplined for using tobacco in Unit 6A.

As the Court previously noted, the term "tobacco-free" is not defined in the statute or the implementing regulations.  The only institutions where possession of tobacco products is expressly banned are the medical center in Columbus and the state penitentiary in Youngstown.  Therefore, Exhibit AN-1 is consistent with both Ohio Rev. Code §5145.32 and Administrative Rule 5120-9-59.  Mr. Carter does not allege that the adoption of the new rule resulted in increased smoking incidents in Unit 6A

or somehow exposed him to a greater health risk.  Accordingly, even if defendant Henry's approval of the memorandum constituted personal involvement for purposes of liability under §1983, Mr. Carter has failed to allege that this act tended to deprive him of his right to be free from cruel and unusual punishment.

VI.

It has been uniformly held that in order for a §1983 claim of conspiracy to survive a motion to dismiss, the pleading which sets forth that claim must do so in specific fashion.  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under §1983." Guiterrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987).  The complaint in question must "allege specific facts showing agreement and concerted actions among the defendants...." Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).  The failure to allege all elements of a conspiracy, including an agreement or a meeting of the minds among the alleged conspirators, and overt actions in furtherance of the conspiracy, requires dismissal of the complaint. Woodrum v. Woodwood County, 866 F.2d 1121, 1126 (9th Cir. 1989); Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988); McGillicuddy v. Clements, 746 F.2d 76, 77 (1st Cir. 1984).

The complaint simply states that "Defendants conspired against the Plaintiff directly and indirectly ... by their deliberate indifference to the Eighth Amendment of the United States Constitution."  There are no specific facts alleged showing any agreement or concerted actions by the defendants to deprive Mr. Carter of his constitutional rights.  In his response to the motion for judgment on the pleadings, Mr. Carter offers a mere supposition that more than forty defendants at RCI could not violate the law or allow the law to be violated without some kind

of agreement.  This statement does not provide the degree of
specificity required to state a §1983 conspiracy claim.
Accordingly, Mr. Carter's conspiracy claim must be dismissed.

VII.

State officials can be held liable for damages under §1983
only if their actions run afoul of the law as it has been clearly
established by applicable precedent.  There are at least two
parts to this inquiry.  First, was there any constitutional
violation at all?  Second, if so, was the law so clear when the
violation occurred that a reasonable state official would have
known that his or her actions were unlawful?  If the answer to
either question is no, the state official is not liable for
damages.  However, the Supreme Court has said that the first
question must be answered first even if the answer to the second
question is obviously no.  <u>See</u> <u>Wilson v. Layne</u>, 526 U.S. 603
(1999).  It is also important to note that this defense has
nothing to do with whether Mr. Carter can get either declaratory
or injunctive relief - it applies only to claims for money
damages.  <u>See</u> <u>Flagner v. Wilkinson</u>, 241 F.3d 475, 483 (6th Cir.
2001)("The defense of qualified immunity protects officials from
individual liability for money damages but not from declaratory
or injunctive relief").

In this case, the Court has already determined that Mr.
Carter failed to state a viable §1983 claim against defendants
Wilkinson, Eleby, Hurley, Upchurch, Whitten, Coval, Lisath,
Payne, Younker, Hall, Lacy, Lawless, Bain, Captain Price, Vaught,
Warren, Lieutenant Price, Turner, Powers, Simmons, Kearns,
Cunningham, Shoop, Jones, and Henry.  Because these defendants
are not alleged to have committed, personally, any constitutional
violations, it is not necessary to consider whether they would
otherwise be entitled to qualified immunity.  <u>See</u> <u>Bukowski v.</u>
<u>City of Akron</u>, 326 F.3d 702, 708 (6th Cir. 2003)(court need not

reach "clearly established" prong of qualified immunity analysis where officials did not violate plaintiff's due process rights). Further examination, however, is required for defendants Carol, Nichols, Hammond, Guy, Taylor, Hewitt, Barnett, Hughes, McCrew, Bell, Taylor, Thompson, Arledge, Duncan, and Callens because these defendants have not argued their lack of personal involvement in the alleged deprivation of Mr. Carter's constitutional rights.

The specific constitutional right that has allegedly been violated here is the Eighth Amendment prohibition against cruel and unusual punishment. In 1993, the Supreme Court held that a prisoner's Eighth Amendment claim could be based on potential harm arising from exposure to environmental tobacco smoke. See Helling, supra. Although the defendants argue that Mr. Carter has failed to plead a constitutional violation, this argument is foreclosed by the Court of Appeals decision that he satisfied the pleading standard set forth in Helling, 509 U.S. at 35, by alleging that the defendants' actions caused him to be exposed to secondhand smoke and that he has suffered injury or a high risk of serious future injury.

The defendants also challenge the "clearly established" prong by framing the issue in terms of an alleged lack of precedent from the Supreme Court and the Sixth Circuit Court of Appeals that recognizes a constitutional violation where there is no cognizable injury to a plaintiff. However, this is simply a variation of their argument that Mr. Carter lacks Article III standing. As previously noted, the Sixth Circuit specifically found that Mr. Carter has standing to pursue his claim, and this Court is bound by that decision. In light of this alleged constitutional injury, the defendants' argument that Mr. Carter cannot show, due to an alleged pleading deficiency, that their actions were objectively unreasonable must likewise be rejected.

VIII.

Based on the foregoing reasons, the Court recommends that
the defendants' motion for judgment on the pleadings (#115) be
granted in part.  It is recommended that the complaint against
defendants Wilkinson, Coval, Eleby, Lawless, Hall, Upchurch,
Lisath, Payne, Younker, Capt. Price, Kearns, Warren, Jones,
Shoop, Powers, Simmons, Lacy, Bain, Lt. Price, Cunningham, Henry,
Whitten, Turner, Hurley, and Vaught be dismissed in its entirety
for failure to state a claim since Mr. Carter failed to allege
that any of these defendants were personally involved in the
violation of his Eighth Amendment rights.  It is further
recommended that Mr. Carter's conspiracy claim be dismissed.
Lastly, the Court recommends that the motion for judgment on the
pleadings be denied to the extent that the remaining defendants
have not shown that they are entitled to qualified immunity on
the present record.

IX.

The defendants have also moved for a stay of discovery
pending resolution of their motion for judgment on the pleadings.
A stay of discovery for any reason is a matter ordinarily
committed to the sound discretion of the trial court.  Chrysler
Corp. v. Fedders Corp., 643 F.2d 1229 (6th Cir.), cert. denied
454 U.S. 893 (1981).  In ruling on a motion for stay, the Court
is required to weigh the burden of proceeding with discovery upon
the party from whom discovery is sought against the hardship
which would be worked by a denial of discovery.  Additionally,
the Court is required to take into account any societal interests
which are implicated by either proceeding with or postponing
discovery.  Marrese v. American Academy of Orthopedic Surgeons,
706 F.2d 1488, 1493 (7th Cir. 1983).  When a stay, rather than a
prohibition of discovery is sought, the burden upon the party
requesting the stay is less than if he were requesting a total

freedom from discovery.  _Id_.

In this case, the Court finds that the burden on the defendants of proceeding with discovery is greater than the hardship to Mr. Carter that will entail from granting the requested stay.  The Court has issued its Report and Recommendation on the motion for judgment on the pleadings, and the matter will now go to the District Judge for final disposition.  Accordingly, any stay of discovery should be relatively brief.  In addition, no societal interests will be adversely implicated as the result of such stay.  Finally, the defendants who will likely remain in this case have asserted the defense of qualified immunity, and until the District Judge acts on this Report and Recommendation, their entitlement to this defense (at least at the pleadings stage) has not been conclusively determined.  For these reasons, the Court grants the defendants' motion for a stay of discovery (#116) pending the final resolution of the motion for judgment on the pleadings.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to

object to the Report and Recommendation will result in a
waiver of the right to have the district judge review the
Report and Recommendation de novo, and also operates as a
waiver of the right to appeal the decision of the District
Court adopting the Report and Recommendation.  See Thomas v.
Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d
947 (6th Cir. 1981).

                              /s/ Terence P. Kemp
                              United States Magistrate Judge